HENRY STEERS, INCORPORATED, v. LENA DUNNEWALD, ADMINISTRATRIX.

Submitted December 4, 1913—Decided February 24, 1914.

A workman employed in building a bridge over a river near its outlet in a bay was last seen alive at his home some miles from the place of work, two hours before he was to return to his work. His body was afterwards found in the bay. There was no evidence as to how he met his death. *Held*, that it might properly be inferred that he came to his death by accident, but not that the accident arose out of his employment.

On *certiorari* to Hudson Pleas.

The facts are thus stated in the findings of the trial judge: "On the 13th day of April, 1912, Dunnewald was employed by Henry Steers, Incorporated, the defendant, in the reconstruction of a drawbridge over the Hackensack river. The work was peculiarly hazardous. In order to approach the place where the deceased was employed it became necessary to walk over a trestle running out into the Hackensack river, and it became necessary to pass over a derrick and some other temporary constructions. The deceased worked all day on the 13th day of April. The work was so far advanced that it was planned to shift an old drawbridge and place the new drawbridge construction in position during that night. The employes were instructed to return to work at eleven o'clock that night. Dunnewald lived in Hoboken; he left his house to go to work at nine o'clock that night. The timekeeper's book and the testimony shows that he did not render actual service for the company after leaving his house. He did not return home after leaving his house and was not seen alive again by anyone. That he reached the immediate vicinity of his employment is unquestioned, as his body was found in the Newark bay, into which the Hackensack river runs, a few days after. One witness testified that he saw a body in the river being carried by the tide toward the Newark bay shortly

after the accident, and from his description of the body it appears to have been the body of Mr. Dunnewald.

"The court is warranted in the finding of the fact, from the evidence, that Dunnewald met his death either by falling from the trestle, the approach to the new construction work or from the derrick on his way from the mainland to the work. On the night in question the weather was bad; there was a thick fog prevailing. Taking all the facts presented into consideration, I have reached these determinations and conclusions:

"*First.* The deceased was engaged in the employment of the defendant company at the time of his death and was drowned while engaged in such employment; that the company had notice of the drowning of the deceased and that the liability of the defendant is the liability created by the second section of the act under which this proceeding is brought."

Before Justices SWAYZE and BERGEN.

For the petitioner, *Samuel A. Besson.*

For the prosecutor-defendant, *John W. Bishop* and *Kinsley Twining.*

The opinion of the court was delivered by

SWAYZE, J. There is no finding that the death of the decedent was by accident, nor that it arose out of and in the course of his employment. All these facts are essential to recovery. *Pamph. L.* 1911, *p.* 136, § 2, *pl.* 7. The learned judge did not even find how decedent met his death; he said he was warranted in finding that it was either by falling through the trestle, the approach to the new construction work, or from the derrick on his way from the mainland to the work. He does not determine which.

We do not, however, desire to deprive the plaintiff of any right she may have merely because the findings are insufficient, and we have therefore examined the evidence with a view to determining whether it would be possible for the

trial judge to find therefrom the facts necessary to support the judgment. We think he might properly find that the decedent came to his death by accident. It must have been either accident, suicide or murder. Suicide and murder involve criminal acts and crime is not to be presumed. The only alternative is accident. Accident may indeed result from intoxication, but the statute places the burden of proof of intoxication on the defendant. The question whether the accident arose out of and in the course of employment is more difficult. How difficult it may sometimes be is shown by the differences of opinion expressed in the House of Lords in *Marshall* v. *Owners of S. S. Wild Rose* (1910), *A. C.* 486; *Swansea Vale (Owners)* v. *Rice* (1912), *Id.* 238. In this case the petitioner was last seen alive at his home in Hoboken two hours before he was to return to his work and some miles from the place of work. The accident may have happened at some other point in the river, from the decedent having mistaken other railroad trestles for that of the Central railroad, from his getting in the swamp where his son afterward sought for his body, or, at best, for the petitioner's case on the trestle or tracks at the Central railroad bridge which he had to cross to reach his work. If we assume the latter as the more probable, it is a conjecture, or likely guess, no more. It does not reach the certainty of a logical inference. But even if such were the fact, the best that could be said would be that the accident arose in the course of employment, and there would still be a failure of proof that it arose out of the employment. The decedent had gone to his home for his own purposes, not for the defendant's; he was returning to his place of work but had not yet reached it. Apparently, it was necessary for the workmen to take a boat provided by defendant to reach their work. Up to the time they took the boat they were on the property of the railroad company which the defendant did not control; trains were stopped by the railroad company on the trestle at the drawbridge for some of the workmen; whether for petitioner or not does not appear. Whatever accident happened to the petitioner under such circumstances arose not out of his employment but out of

the character of the road to his work. If the defendant is to be held for accident due to the dangers of the trestle or the track, it would, logically, be liable for injuries happening from the dangers incident to the transportation of workmen by the railroad company. · The case differs in that respect from *Cremins* v. *Guest, Keen & Nettlefolds, Limited* (1908), 1 *K. B.* 469, where the train was furnished by the employers under an implied term of the contract of service that the men should have the right to travel to and fro without charge. It more nearly resembles *Edwards* v. *Wingham Agricultural Implement Co., Limited* (1913), 3 *Id.* 596, where the accident happened while the workman was going home after his work had ended on a bicycle furnished by his employers, and Nolan *v.* Porter & Sons, cited in that case by Lord Justice Swinfen-Eady. The question seems pretty well at rest in the English courts, where most of the discussion is to be found owing to the fact that their statute antedates our American statutes. Naturally, the cases most frequently arise where sailors have been drowned. In *Moore* v. *Manchester Liners* (1910), *A. C.* 498, a majority of the law lords held, reversing a majority in the Court of Appeal, that the employer was liable where a seaman on returning to his ship at midnight, while climbing a ladder insecurely fixed between the quay and the ship (the only means of communication), fell into the water and was drowned. The following year two cases arose which, as Lord Justice Fletcher-Moulton said, raised the issue in a sharp and clear way. In one a seaman returning to his ship had reached the gangway provided to furnish access thereto; the employer was held liable. In the other there was no proof whether he had or had not reached the gangway; the employer was held not liable. *Kitchenham* v. *Owners of S. S. Johannesburg; Leach* v. *Oakley Street & Co.* (1911), 1 *K. B.* 523. The principle is thus stated by Lord Justice Fletcher-Moulton (at *p.* 527) : "The return to the ship is in the course of his employment, but the risks do not become risks arising out of his employment until he has to do something specifically connected with his employment on the ship. Thus, if the risk is one due to the means of access to the ship,

as in *Moore* v. *Manchester Liners, supra,* the accident is rightly said to arise out of his employment; but if the accident is shown to arise from something not specifically connected with the ship, it cannot be said to arise out of his employment. I do not think that the dividing line is when he actually touches the ship or the special means of access thereto." One of these cases was appealed to the House of Lords, *Kitchenham* v. *Owners of S. S. Johannesburg* (1911), *A. C.* 417, and Lord Loreburn expressed their approval of Lord Justice Fletcher-Moulton's statement of the decision in Moore v. Manchester Lines. In *Fletcher* v. *Owners of Ship Duchess* (1911), *Id.* 671, the master of a ship went ashore, returned to the pier and hailed his ship to send a boat. Before the boat reached him he fell off the pier and was drowned. It was held that the accident did not arise out of his employment. The most recent case was much stronger for the petitioner, yet he was denied recovery. *Webber* v. *Wannsborough Paper Co., Limited* (1913), 3 *K. B.* 615. A seaman, in order to reach his home from his ship, had to cross a plank, one end of which rested on the dock, the other end upon the rung of a ladder, which was permanently fixed to and formed part of a quay. He crossed the plank in safety, but when he had ascended a few steps of the ladder slipped and fell. The court held that the sphere of his employment was the ship and not the quay, and that as he was injured while he was ascending the fixed ladder attached to the quay, the accident did not arise out of and in the course of the employment. See, also, *Ann. Cas.* (1913), *C.* 1, where the cases are collected in an elaborate note.

We think that the evidence in the present case would not have justified a finding that the accident arose out of the employment. The judgment must be reversed, but it will be without costs.