## WESTMAN'S CASE

### Cumberland.    Opinion April 30, 1919.

*Necessary element of proof in claims under Compensation Act.    Burden of proof.*
*Rule of law to be applied where the deceased or injured party might at differ-*
*ent times be engaged in different duties, some that come within the Act*
*and some that are excluded by the Act.    Interpretation of phrases*
*"injury arising in the course of employment" and "Injury*
*arising out of employment."    Rule as to there being a*
*presumption that death was caused by accident rather*
*than by foul means.    Weight of evidence*
*upon which commissioner may make*
*his findings.*

This is a proceeding instituted by the dependent widow of Fred G. Westman to recover compensation under the terms and conditions of the statute commonly known as the Workman's Compensation Act.

At the time of his fatal accident the deceased was employed by the defendant towboat company as a cook on its towboat Portland.    By the terms of his employment he performed all the duties of cook on the boat, had full authority to buy, and was charged with the duty of buying all supplies necessary to that work, and, when required, assisted around the deck.    The accident occurred at about noon, on the sixteenth day of February, nineteen hundred eighteen, when the Portland was lying in a dock.    On that day, having served dinner to the crew and partaken of his own midday meal, Westman went to a neighboring store to buy supplies.    Taking two or three purchases under his arm he started to return to the boat, being observed to pass along the dock toward his destination, and thus, for the last time, was seen alive.    A witness in the case heard a splash as if one fell in the water, and upon investigation, the unconscious body of Westman was discovered in the dock.    The same was promptly removed, resuscitation was attempted but without avail.

The record discloses that the towboat Portland, on which Westman was employed as we have stated, was duly registered at the proper United States Customs House; that the range of her license was from Eastport to Cape Cod; that her towing duties consisted in going wherever her orders called her to go, within the range of her license; that the greater part of her work was in Portland harbor; that at the time of the accident she was not engaged on any job, but was lying at the dock.

*Held:*

1. The burden of proof rests upon the claimant to prove the facts necessary to establish the right to compensation under the Workman's Compensation Act.

2. That Westman at the time of his fatal accident was not a seaman on a vessel engaged in interstate or foreign commerce.

3. That the injury suffered by Westman was accidental.

4. That Westman, at the time of his death, was doing, at a time, at a place, and of a nature, the duties which his employment reasonably called him to perform; hence the injury was received in the course of his employment.

5. Westman's accident was a natural incident of his work, the risk was one occasioned by the nature of his employment, the injury was traceable to the nature of his work and to the risks which his employer's work exposed him; hence, the injury arose out of the employment.

Appeal from findings of single Justice under Workmen's Compensation Act. Judgment in accordance with opinion.

Case stated in opinion.

*Frederick J. Laughlin,* for applicant. .

*H. S. Avery,* for defendant.

*Carroll B. Skillin, and Edward H. Wilson,* for London Guarantee & Accident Co., Ltd.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DEASY, JJ.

PHILBROOK, J. This is a proceeding instituted by the dependent widow of Fred G. Westman to recover compensation under the terms and conditions of the statute commonly known as the Workmen's Compensation Act.

At the time of his fatal accident the deceased was employed by the defendant towboat company as a cook on its towboat Portland. By the terms of his employment he performed all the duties of cook on the boat, had full authority to buy, and was charged with the duty of buying all supplies necessary to that work, and, when required, assisted around the deck. The accident occurred at about noon, on the sixteenth day of February, nineteen hundred eighteen, when the Portland was lying in a dock. The boat was moored to a coal lighter which, in turn, was moored to the wharf. Between these two crafts and the head of the dock was lying another lighter which was also moored to the dock. This lighter was in charge of

A. P. Bennett, a witness in the case.    On the outside of the second lighter was moored another towboat, and outside the latter was moored still another towboat.    The distance from the edge of the wharf to the surface of the water was estimated to be nine or ten feet.    On the fatal day, having served dinner to the crew and partaken of his own midday meal, Westman went to a neighboring store to buy supplies.    Taking two or three purchases under his arm he started to return to the boat, being observed to pass along the dock toward his destination, and thus, for the last time, was seen alive. Mr. Bennett, who was on board his lighter, says he heard a thump thereon, followed by a splash.    Upon making investigation he saw the unconscious body of Westman in the water between the ends of the two lighters, called for assistance, and the body was taken to the dock.    Resuscitation was attempted but without avail.    Westman was dead.

Proper steps were taken to present the claim of the plaintiff to the chairman of the Industrial Accident Commission.    He sustained the claim and ordered payment of the compensation provided by statute.    This finding and order, following the practice provided in such cases, was presented to a Justice of the Supreme Court, who rendered a decree in accordance therewith, and from that decree the defendants bring the case before us by appeal.

DEFENDANT'S CONTENTIONS:

1. That the deceased employee was a seaman on a vessel engaged in interstate and foreign commerce, and, therefore his dependent widow is not entitled to the benefits of the Workmen's Compensation Act.

2. That the burden of proof is upon the petitioner to show by the preponderance of the evidence that the injury arose out of and in the course of the employment, and that failing to establish the burden of proof the petitioner cannot recover.

3. That there is no evidence on which the Commissioner was warranted in finding as a fact that the injury arose out of and in the course of the employment.    That such a finding of fact on the evidence presented could be mere conjecture only, and that the evidence most favorable to the plaintiff was as consistent with the injury arising in such a manner as not to be compensatable as to be in such a manner as to be compensatable.

First Contention:

As the basis of their first contention the defendants call attention to R. S., Chap. 50, Sec. 1, Par. 2, which provides that "masters of and seamen on vessels engaged in interstate or foreign commerce" are excluded from the classes of employees who are entitled to the benefits arising under the Compensation Act. The reasons for this statutory exclusion, evidently growing out of the maritime law and the jurisdiction of admiralty courts over maritime torts, are not in issue, so that a discussion of this most interesting subject would be without justification or merit at this time. Nor is the jurisdiction of the state tribunal over the instant case denied, a jurisdiction which the Judicial Code, U. S., Stat. Chap. 11, Sec. 1233, as amended by Act of Congress October 6, 1917, confers in behalf of those who claim "the rights and remedies under the workmen's compensation law of any State." But the defendants read the excluding clause literally and thereunder claim immunity from liability. Therefore the first question presented to us is whether, at the time of his fatal accident, the deceased was a seaman on a vessel engaged in interstate or foreign commerce, under the terms of the Compensation Act, when properly construed.

The record discloses that the towboat Portland, on which Westman was employed as we have stated, was duly registered at the proper United States Customs House; that the range of her license was from Eastport to Cape Cod; that her towing duties consisted in going wherever her orders called her to go, within the range of her license; that the greater part of her work was in Portland harbor; that at the time of the accident she was not engaged on any job, but was lying at the dock.

Defendants contend that under these conditions of registry, license, and breadth of duties, this towboat is to be regarded in general terms as a vessel engaged in interstate and foreign commerce. They even claim that her principal business was aiding and facilitating such commerce, although we cannot concede that the record substantiates this claim. They urge that the true question for determination is whether this vessel was one generally engaged in interstate and foreign commerce, and not whether she was so engaged at the time of the accident. They say that without the more permanent classification as to the character of the vessel's employment there would

arise frequent confusion and uncertainty as to the rule applicable under the Compensation Act, because the employee might at one moment be engaged in interstate and foreign commerce and otherwise at another moment. According to the great weight of authority, however, the test must be applied to the conditions actually existing at the time when the accident occurred.

In *N. Y. C. & H. R. R. Co.*, v. *Carr*, 238 U. S., 260; 59 L. ed., 1298, Mr. Justice Lanmar said: "Owing to the fact that during the same day railroad employees often and rapidly pass from one class of employment to another, the courts are constantly called upon to decide those close questions where it is difficult to define the line which divides the state from the interstate business. . . . Each case must be decided in the light of the particular facts, with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof." This opinion, it should be observed, was given in an action brought under the Federal Employers' Liability Act, and not under a Workmen's Compensation Act, but we hold that the same rule should apply to actions brought under either act. Other cases in which the same rule is applied are *Shanks* v. *Delaware, Lackawanna & Western Railroad*, 239 U. S., 556; 60 L. ed. 436; *Erie Railroad Co.* v. *Jacobus*, 221 Fed. Rep., 335; *Illinois Central Railroad Co.* v. *Behrens*, 233 U. S., 473; 58 L. ed., 1051, and cases cited in Ann. Cas. 1914 C. 163.

In *Morrison* v. *Commercial Towboat Co.*, 227 Mass., 237, a case arising under the Massachusetts' Workmen's Compensation Act, the court was considering the claim of a master of a towboat, and discussed the same excluding clause as that now before us. In that case sometimes the boat was engaged in towing barges from Boston docks to a point down the harbor where ocean-going tugs took them and towed them to ports in other states. Sometimes the boat was employed in work wholly within the harbor and in no way connected with or similar to that just above described. When engaged in moving barges as the initial part of their interstate voyage the court held that the exclusion of the statute applied, but further said, "As the towboat on which the plaintiff was master, plied only within the limits of Boston Harbor, it may be assumed that at times it was engaged in work that plainly was of intrastate character. The deci-

sive question in this case is, was the towboat Hersey engaged in interstate commerce, within the meaning of the statute, at the time when the plaintiff was injured." So it will be seen, in the case just referred to, that the decision turned upon the nature of the work in which the towboat was engaged at the very time when the employee was injured, and not upon the general character of the work done by the towboat, or whether a greater or smaller part of that work was interstate or intrastate.

Under the facts of the case at bar, hereinbefore briefly stated, and more fully set forth in the record, we have no hesitation in declaring that Westman, at the time of his fatal accident, was not a seaman on a vessel engaged in interstate or foreign commerce and it must follow that the first contention of the defendant fails.

SECOND CONTENTION:

It is undoubtedly true, and has been frequently so held, that the burden of proof rests upon the claimant to prove the facts necessary to establish a right to compensation under a Workmen's Compensation Act. *Sponatski's Case*, 220 Mass., 526; *Von Ette's Case*, 223 Mass., 56; *Sanderson's Case*, 224 Mass., 558. By the same authorities, and many others, the claimant must go further than simply to show a state of facts which is as equally consistent with no right to compensation as it is with such right. Surmise, conjecture, guess or speculation are not sufficient to sustain the burden and justify a finding in behalf of the claimant. But on the other hand "if the evidence upon the questions involved is slender but is sufficient to satisfy a reasonable man, a case has been made out in favor of the claimant. *Von Ette's Case*, supra. "The Industrial Accident Board, in the determination of questions of fact, is permitted to draw such inferences from the evidence and all the circumstances as a reasonable man could draw." *Sanderson's Case*, supra. "If the evidence, though slight, is yet sufficient to make a reasonable man conclude in his (the claimant's) favor on the vital points, then his case is proved." *Sponatski's Case*, supra. These rules undoubtedly apply to the burden resting upon the claimant to show that the injury which caused death arose out of and in the course of the employment of the deceased. They are in harmony with defendant's second contention, although, perhaps, the defendants would desire to limit the extent of these rules to some degree. The second contention is sound.

THIRD CONTENTION:

The third contention directly challenges the findings of fact, made by the Commissioner, upon the question whether the injury actually arose out of and in the course of the employment. Section thirty-four of the act now under consideration provides that in the absence of fraud the decision of the Commissioner "upon all questions of fact shall be final." This provision has been recognized in the somewhat recent case, *Hight* v. *York Manf. Co.*, 116 Maine, 81. The same section also provides for an appeal, by any party in interest, to the Supreme Judicial Court, where a justice thereof ministerially renders a decree in accordance with the findings of the Commissioner. "Such decree," says the statute, "shall have the same effect and all proceedings in relation thereto shall thereafter be the same as though rendered in a suit in equity duly heard and determined by said court, except there shall be no appeal therefrom upon questions of fact found by said commission or its chairman." If any party in interest desires to appeal from this ministerial decree then the statute provides that "the proceedings shall be the same as in appeals in equity procedure and the law court may, after consideration, reverse or modify any decree made by a justice, based upon an erroneous ruling or finding of law." It follows that in order to make his challenge successful the defendant must rely upon a favorable answer to the query, as a question of law only, whether or not there was any evidence before the Commissioner upon which his decision may so firmly stand as to make it final.

This naturally leads to the inquiry as to what must be proved and how the burden of proof must or may be satisfied. Under the terms of our statute, and the rules of evidence above referred to, it must be conceded that to insure recovery of compensation the burden of proof rests upon the claimant to establish that Westman's death was caused (a) by accident; (b) that the accident arose out of the employment; (c) that the accident arose in the course of the employment. "Even though the injury arose out of and in the course of the employment, if it be not an accident within the purview of the act, there can be no recovery. Even if there be an accident which occurred in the course of the employment, if it did not arise out of the employment, there can be no recovery; and even though there be an accident which arose out of the employment, if it did not

arise in the course of the employment, there can be no recovery." *Bryant* v. *Fissell*, 84 N. J., Law, 72; 86 Atl. Rep., 458.

As to sustaining the burden of proof we have just seen, when discussing the second contention of the defendant, that even slender evidence may be sufficient if it would satisfy a reasonable man, and that reasonable inferences may be drawn from the evidence. But it is also true that in attempting to prove accidental death it is not necessary to negative every other possibility of death except that by accidental means. *Rideout Co.* v. *Pillsbury*, 159 Pac. Rep., 435. Nor must the proof be necessarily direct and positive, it may be by circumstances; *Heileman Brewing Co.* v. *Shaw*, 161 Wis., 443; 154 N. W., 631. Moreover there are legal presumptions which may be properly considered. "In human experience it is the common desire and effort to preserve life, rather than destroy it, and hence the law, where a person is found dead, imputes to the circumstances the prima facie significance that death was caused by accident rather than suicide, and that presumption persists in its legal force to negative the fact of suicide until overcome by evidence." *Milwaukee Western Fuel Co.* v. *Industrial Commission of Wisconsin*, 150 N. W., 998. Under this rule of presumption it was held in *Steers* v. *Dunnewald*, 85 N. J. Law, 449, that the death under consideration must have arisen from either accident, suicide or murder, and added "Suicide and murder involve criminal acts and crime is not to be presumed. The only other alternative is accident." In short, the amount of evidence, circumstantial as well as direct evidence, together with proper legal presumptions, are all to be taken into consideration when investigating the question whether any evidence was before the Commissioner upon which he might properly find a verdict.

### ACCIDENT:

Recurring to the three essentials which the claimant must prove we first enquire, what is an accident, as the term is used in the statute, and has this essential been proved.

The Michigan Compensation Act does not award compensation for all personal injuries suffered by an employee, but for accidental injuries only, and the court of that state, in *Robbins* v. *Gas Engine Co.*, 157 N. W., 437, said that the words "accident" and "accidental," in their act, were used in their popular and ordinary meaning, as happen-

ing by chance, unexpectedly taking place, not according to the usual course of things. The Supreme Federal tribunal in *Mutual Accident Association* v. *Barry*, 131 U. S., 100, 33 L. ed., 60, said that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs, which produces the injury, then the injury has resulted through accidental means. The question whether or not an injury is an accident, within the purview of the act, is a mixed question of law and fact. When the facts are ascertained, are determined, it becomes a question of law. *Bryant* v. *Fissell*, supra; *Roper* v. *Greenwood*, (1900) 83 L. T., 471; *Fenton* v. *Thomley* (1903) A. C., 443; 19 T. L. R., 684.

As our statute, like many others, provides compensation only when the injury arises from accident, has this essential been proved. Before answering this question let us cite one or two cases which seem pertinent.

In *Milwaukee, etc.,* v. *Industrial Commission, etc.,* supra, a workman, in going to a toilet room, walked along a narrow passage way between the buildings and the river. The toilet room and the walk were used by the employees of the company. Another workman, hearing a splash, looked out of a window and saw his fellow workman in the water but making no struggle to save himself. Assistance was rendered as soon as possible but life could not be restored. Held, that all the circumstances warranted a finding that death resulted from accident.

In *Steers* v. *Dunnewald*, supra, a workman, employed in building a bridge over a river near its outlet, was last seen alive at his home, some miles from his work, and his dead body was later found in the bay, there being no evidence as to how he met his death. Under the presumptions regarding accident, suicide and murder, the court held that a finding of death by accident should be sustained.

Where a deck hand, on a steamboat so loaded as to make it convenient to go forward by walking along the narrow side rail, after being seen to go forward, was next seen in the water, drowning, there being no evidence of, or reason for, suicide, was held to have met death by accident. *Olsen* v. *Hale*, 2 Cal., I. A. C., Dec., 607.

In an English case, a sailor who went on deck at night to get fresh air, was found dead in the water on the following morning. Death held to be accidental. *Marshall* v. *Owners of Ship Wild Rose*, 3 B. W. C. C., 514.

In the case at bar there is no circumstance or evidence which even hints at suicide or murder. There is no evidence tending to show that Westman was other than a well, able-bodied man, with pleasant domestic environment. No financial or other trouble bore him down. To such men life is sweet and its termination would not be naturally sought by design. By the testimony, by proper inference and by legal presumptions we think the finding of the Commissioner upon the question of accidental death was correct.

INJURY ARISING IN THE COURSE OF EMPLOYMENT:

The authorities seem well agreed that the expressions "arising out of" and "in the course of" in compensation acts are not synonymous. The words " in the course of" refer to time, place, and circumstances, under which the accident takes place. *Bryant* v. *Fissell*, supra; *Fitzgerald* v. *Clarke & Son*; (1908) 2 K. B. 796. In the former case the court said "An accident arises in the course of the employment if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time."

In *Larke* v. *John Hancock, etc., Ins. Co.*, 90 Conn., 303, the court said, "An injury to an employee is said to arise in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is fulfilling the duties of his employment, or engaged in doing something incidental to it."

The Massachusetts court, in *McNicol's Case*, 215 Mass., 497, tersely said, "An injury is received in the course of the employment when it comes while the workman is doing the duty which he is employed to perform."

Westman, at the time of his death, according to the record, was doing, at a time, at a place, and of a nature, the duties which his employment reasonably called him to perform. His injuries were received in the course of his employment.

INJURY ARISING OUT OF EMPLOYMENT:

This branch of the law has given rise to much discussion in the English courts, as well as in the courts of this country. It is practically impossible, in every case, to harmonize the result with that of

every other case, or to clearly understand the logic which leaves one accident within the legal zone and the other without it.   Upon fundamentals the courts are substantially in harmony.   The great weight of authority sustains the view that these words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked, and the injury which he received.   *McNicol's Case,* supra; *Coronado Beach Co.* v. *Pillsbury,* 158 Pac., 212; *Federal Rubber Co.* v. *Havolic,* 156 N. W., 143; *Fitzgerald* v. *Clarke & Son,* supra; *Mitchinson* v. *Day Bros.,* (1913) 6 B. W. C. C., 191.

"Under this test," says the court in *McNicol's case,* supra, "if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated, by a reasonable person familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment.   But it excludes an injury which cannot fairly be traced to the employment as a contributing, proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.   The causative danger must be peculiar to the work, and not common to the neighborhood.   It must be incidental to the character of the business, and not independent of the relation of master and servant."

In *Coronada* v. *Pillsbury,* supra, the court said, "The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work or to the risks to which the employer's business exposes the employee.   The accident must be one resulting from a risk reasonably incident to the employment."

In *Mitchinson* v. *Day Bros.,* supra, a clear statement is made in this language, "To satisfy the words of the act the occurrence must be one in which there is personal injury by something arising in a manner unexpected and unforeseen, from a risk reasonably incidental to the employment.   Nothing can come 'out of the employment' which has not, in some reasonable sense, its origin, its source, its causa causans, in the employment."   It might with safety be said that, in order for the accident to arise out of the employment, the employment must have been the proximate cause of the accident.

Did Westman's fatal accident arise out of the employment.   Again before answering this question we cite a few pertinent cases.

A watchman on construction work, while making his rounds, fell from a board scaffold into the cellar below. Held that the accident arose out of the employment. *Sorge* v. *Aldebaran Co.*, 3 N. Y. St. Dep. Rep., 390.

A cook, returning from a porch to the kitchen, there to resume his duties, fell down the cellar stairs. Held that the accident arose out of the employment. *Espy* v. *Crossman*, 2 Cal. I. A. C. Dec. 328.

A night watchman, while making his rounds, fell through an opening in the floor and was thereby killed. Held that the accident arose out of the employment. *Carter* v. *Hume-Bennett Lumber Co.*, 2 Cal. I. A. C. Dec., 42.

A ship master, who went ashore to pay a seaman his wages, on his return fell from the dock and was drowned. Held that the accident arose out of the employment. *Jones* v. *Owners of Ship Alice and Eliza*, (1910) 3 B. W. C. C., 495.

All these cases seem pertinent to the one at bar. Westman's accident was a natural incident of his work, the risk was one occasioned by the nature of his employment, the injury was traceable to the nature of his work and to the risks which his employer's work exposed him. We feel assured that the fatality arose out of the employment.

The mandate will accordingly be,

*Appeal dismissed.*