CALUMET AND ARIZONA MINING COMPANY, a Corporation, Appellant, v. J. L. WINTERS, Administrator of the Estate of LEWIS B. NAYLOR, Deceased, Appellee.

1. MASTER AND SERVANT—RULE AS TO BURDEN OF PROOF, WHERE DEATH OCCURS FROM UNASCERTAINABLE CAUSE STATED.—In an action under the Employers' Liability Act, where decedent was electrocuted, from an unascertainable cause, the claimant has the burden of proving no negligence on the part of decedent, but where there is no evidence that decedent's negligence did or did not cause his death, the burden is sustained by proof which renders probable the fact that decedent was not negligent, under the

1. Burden of proving contributory negligence under Employers' Liability Acts, see note in 33 L. R. A. (N. S.) 1218.

Constitutionality, application and effect of the Federal Employers' Act, see notes in 17 Ann. Cas. 331; 47 L. R. A. (N. S.) 38; 48 L. R. A. (N. S.) 987; L. R. A. 1915C, 47; 12 A. L. R. 698.

See 26 Cyc. 1415, 1455, 1460.

doctrine that doubt will be resolved in favor of an employee for compensation; the court presuming, where the cause of death is unascertainable, that it was natural and accidental, not suicidal.

2. MASTER AND SERVANT—WHETHER AN INJURY IS AN ACCIDENT IS QUESTION OF LAW.—Whether or not an injury is an accident, once the facts have been ascertained, is a question of law.

3. MASTER AND SERVANT—EVIDENCE INSUFFICIENT TO SHOW DECEDENT WAS NEGLIGENT OR COMMITTED SUICIDE. — Where it would have been necessary for decedent to turn his body and lift his hand, evidence *held* insufficient to show that he negligently or designedly touched an uninsulated fuse by which he was electrocuted.

4. MASTER AND SERVANT—WHERE DIFFERENT CONCLUSIONS MIGHT BE DRAWN, QUESTION IS FOR JURY.—Where decedent was electrocuted from an unascertainable cause, and the minds of reasonable persons might come to different conclusions upon the evidence submitted, a question for the jury is presented.

On rehearing of appeal from a judgment of the Superior Court of the County of Cochise. A. G. McAlister, Judge. Affirmed.

For former opinion, see 24 Ariz. 333, 209 Pac. 298.

Mr. Cleon T. Knapp and Messrs. Boyle & Pickett, for Appellant.

Mr. Alexander Murry and Mr. Frank E. Thomas, for Appellee.

ROSS, J.—Action under the Employers' Liability Law (Civ. Code 1913, §§ 3153–3179). Lewis B. Naylor, while in the employment of the defendant mining company as an electrician, and working in and about defendant's electrical plant, used in connection with its mining operations, on May 14, 1918, was electrocuted. Upon the issues formed by the pleadings, a trial before a jury was had, and a verdict returned for plaintiff.

The only question presented on appeal is whether the plaintiff has sustained the burden of proof,

which, under the law, is his duty. There is no dispute as to the facts shown by the evidence, the divergence being as to their effect; it being contended by the defendant that they do not establish by a preponderance of the evidence, that the accident was not caused by the deceased's negligence.

The only witness that testified to the circumstances of Naylor's death, and how it occurred, was William R. Gibson, chief electrician for defendant. The substance of this witness' testimony is that, at about 9:30 o'clock in the evening he was installing a switchboard in the compressor or switchboard room of the Junction Shaft Mine belonging to the defendant; that he had as assistants "two, four, probably six to ten, electricians working around, and had helpers for first one thing and another." At the time, one switchboard had been installed and was in operation, and the present work was directed toward installing a second one. Every electrical conductor in the room was insulated except a fuse terminal about one inch long on the live switchboard. This switch and the uninsulated fuse plug were attached to upright boards and were about seven feet from the floor of the room; they were on the opposite side of the upright boards, from where Naylor was, boxed in so that one to reach the fuse plug from Naylor's position would have to reach up and around the panel of upright boards and down about one inch.

Naylor was sitting upon a board about three feet high and from twenty to twenty-four inches away from the upright boards holding the live switch, with his back toward such live switch. Standing in front of Naylor was Gibson, his head a little lower than Naylor's, and within about fourteen inches of Naylor's head. They were facing each other, and were handling an insulated piece of wire about fourteen inches long, which was being bent into shape, under

Gibson's direction, for use in installing the other switchboard. Gibson says: "As I was bending the wire, there was a crash and a flash and it blinded me for a moment, and another flash. Of course this flash was caused from electricity; he had dropped the wire, and I reached for it, and my arm was lying across his leg." When asked the question, "Do you know whether Naylor dropped the wire, or do you simply infer he dropped it from what happened?" he answered, "That is not exactly clear to me. It seems to me he dropped it because I held the wire, and, of course when he was dead he dropped it, and he might have dropped it a second or two before." Witness further said that Naylor met his death from electricity, and the only way it could possibly have happened would have been to guide his hand and touch something that was not insulated. Then followed these questions and answers:

"Q. Do you know whether Mr. Naylor touched anything at the time of his death? A. No; I do not know it.

"Q. Did you see his hand touch anything at the time of this flash or crash? A. No.

"Q. Did you see either one of his hands in back of the switchboard prior to the explosion? A. No.

"Q. Then you didn't see him make any attempted motion with his hands immediately before the explosion? A. I did not; no."

Witness said it was possible, but not convenient, for Naylor in his position to touch fuse terminal by "turning partly around and lifting his arm back this way up behind this board and then down."

Just after the accident Gibson "looked things over and tried to imagine how he could have done it." And some time after he went back and looked at the machinery, and observed a wire burned off and the boards surrounding fuse plug blackened on the inside.

There was a slight burn on Naylor's left hand and arm that the attending physician said could have been caused by something else than electricity. Deceased was an experienced electrician, had worked for defendant, under Gibson, for three or four months, and assisted in the installation of the live switchboard. The voltage of the live switch was 2,200. Four of the employees were knocked down; and Gibson was stunned for thirty or forty seconds at the instant Naylor was electrocuted.

The defendant, in its opening brief, after stating the facts as viewed from its standpoint, and practically as I have stated them, says:

"Thus the only evidence in this case as to what transpired at the time of the accident fails to show how Naylor [deceased] was killed. There is absolutely no testimony that he was not killed by his own negligence."

While this court has held the plaintiff must not only allege but prove, under the Employers' Liability Law, that injury or death was caused by an accident due to a condition or conditions of the occupation, and that it was not caused by the negligence of the killed or injured employee (*Calumet & Arizona Mining Co.* v. *Chambers,* 20 Ariz. 54, 176 Pac. 839; *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124), we have not had occasion to discuss or define what will satisfy that burden. From the language of the statute giving the right of action, it was doubtless intended that the onus of showing that he did not, by his negligence, cause his injury or death, should be placed on the employee, or, in case of death, his personal representative or dependent, in the same way and by the same rules and means employed in cases of like character. It should be remembered that the act creates a liability without fault, and is in that respect like the different Workmen's Compensation Laws.

The decision of the United States Supreme Court in *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400, 63 L. Ed. 1058, 6 A. L. R. 1537, 39 Sup. Ct. Rep. 553, sustaining our Employers' Liability Law as constitutional, is based upon the reasoning employed by that court in upholding the Workmen's Compensation Laws of New York (Laws 1913, c. 816, re-enacted and amended by Laws 1914, cc. 41, 316), Iowa (Acts 35th Gen. Assem. c. 47), Washington (Laws 1911, p. 345), and Texas (Laws 1913, c. 179 [Vernon's Sayles' Ann. Civ. Stats. 1914, arts. 5246h–5246zzzz]). *New York C. R. Co.* v. *White,* 243 U. S. 188, Ann. Cas. 1917D, 629, 61 L. Ed. 667, L. R. A. 1917D, 1, 37 Sup. Ct. Rep. 247 (see, also, Rose's U. S. Notes); *Hawkins* v. *Bleakly,* 243 U. S. 210, Ann. Cas. 1917D, 637, 61 L. Ed. 678, 37 Sup. Ct. Rep. 255; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, Ann. Cas. 1917D, 642, 61 L. Ed. 685, 37 Sup. Ct. Rep. 260; *Middleton* v. *Texas Power & Light Co.,* 249 U. S. 152, 63 L. Ed. 527, 39 Sup. Ct. Rep. 227.

Our liability law differs from the compensation laws, principally in that the compensation is assessed by a jury or the court, whereas, under the Workmen's Compensation Laws, the compensation is assessed, according to fixed and definite rules, by a commission or some other body, after investigation and hearing. The *Arizona Copper* v. *Hammer* case, *supra,* is classified and treated by the editors of the American Law Reports (vol. 6, 1537, note 1562) as coming under the compensation laws. In many jurisdictions the workmen's compensation statute places the burden upon the plaintiff to show that the accident causing the injury arose out of and in the course of the employment. The decisions of the courts, where this question has arisen, and the evidence is silent as to how the accident happened or the injury occurred, ought to be persuasive in the decision of this case, it would seem.

In view of the purpose of our Employer's Liability Law, and believing, as we do, that the decisions concerning the rights of the employee to recover under Compensation Acts should be very persuasive, we shall be guided, in coming to conclusions, by the rule announced by the Utah court in *Chandler* v. *Industrial Commission of Utah,* 55 Utah, 213, 8 A. L. R. 930, 934, 184 Pac. 1020, as follows:

"We are all united upon the proposition that, in view of the purposes of such acts [Compensation], in case there is any doubt respecting the right to compensation, such doubt should be resolved in favor of the employee or of his dependents as the case may be."

It is obvious that the injury or death, under the statute, must have been caused by an accident due to a condition or conditions of the occupation to entitle a recovery. An injury not caused by an accident, conditioned as above, is not compensable. If it was caused by design or the negligence of the deceased it would not be accidental. Recovery cannot be had for all personal injuries under the Employers' Liability Law, but only for accidental injuries that are due to a condition or conditions of the occupation.

The New Jersey Compensation Act (P. L. 1911, p. 134, as amended by P. L. 1913, p. 302), which is the same as the British Compensation Act, provides for compensation to the workman injured "by accident arising out of and in the course of his employment." In *Bryant* v. *Fissell,* 84 N. J. L., 72, 86 Atl. 458, the court, citing British authorities, said:

"Within the purview of the act, an 'accident' is an unlooked for mishap or untoward event which is not expected or designed."

And further holds that:

"The question whether or not an injury is an 'accident' within the purview of the act is a mixed one of law and fact."

See, also, Workmen's Compensation Acts, Cyc.-C. J., p. 64, § 54.

When the facts are ascertained, it is a question of law. *Westman's Case,* 118 Me. 133, 106 Atl. 532.

A fair candid analysis of the evidence in this case must inevitably convince one that the mishap or untoward event that resulted in Naylor's death was unexpected and not designed. It is also conclusively shown that the only ascertained fact is that Naylor was electrocuted, but just how or why the deadly current reached him is left in doubt and mystery. Quoting from defendant's brief:

"There is absolutely no evidence that the accident was not caused by the negligence of decedent, Naylor. In fact, the record is silent as to what did cause his death and as to any cause that might have or did produce it."

So, while it may be the evidence fails to show Naylor's negligence did not cause his death, it likewise fails to show that his negligence did cause his death. When such is the case, the courts do not halt the proceeding and send the employee away empty handed, but resort to a rule of universal human experience and observation, and that is that when a person is found dead and the cause or means of death is not discoverable or ascertainable, the presumption will be indulged that the death was natural or accidental, and not suicidal. As was said by Mr. Justice BAKER, speaking for the court in *Davis* v. *Boggs,* 22 Ariz. 497, at page 508, 199 Pac. 116, at page 120:

"The law presumes that the injured party was in the exercise of due care until the contrary is made to appear. The presumption is founded on a law of nature, and has for its motives the fear of pain, maiming, and death."

This well-known rule, that suicide will not be presumed, and that, as between accident and suicide, the law supposes accident, has been applied in a great number of cases arising under compensation statutes. *Rideout Co.* v. *Pillsbury,* 173 Cal. 132, 159 Pac. 435, 12 N. C. C. A. 1032; *Humphrey* v. *Industrial Commission,* 285 Ill. 372, 120 N. E. 816; *Westman's Case, supra; Von Ette's Case,* 223 Mass. 56, 111 N. E. 696, L. R. A. 1916D, 641, 12 N. C. C. A. 531; *Sponatski's Case,* 220 Mass. 526, L. R. A. 1916A, 333, 108 N. E. 466, 8 N. C. C. A. 1025; *Wishcaless* v. *Hammond S. & Co.,* 201 Mich. 192, 166 N. W. 993; *State* v. *District Court,* 138 Minn. 138, 164 N. W. 582; *Manziano* v. *Public Service Gas Co.,* 92 N. J. L., 322, 105 Atl. 484; *Milwaukee Western Fuel Co.* v. *Industrial Commission,* 159 Wis. 635, 150 N. W. 998.

In *Steers* v. *Dunnewald,* 85 N. J. L. 449, 89 Atl. 1007, 4 N. C. C. A. 676, it was said:

"We think he [the trial judge] might properly find that the decedent came to his death by accident. It must have been either accident, suicide or murder. Suicide and murder involve criminal acts and crime is not to be presumed."

The defendant would have us indulge the other presumption; that is, that the deceased (Naylor) either carelessly and negligently, or designedly, guided his hand to the uninsulated fuse plug and in this manner established connection with the electric current that caused his death; but there is no evidence that he did such. The uninsulated terminal fuse was seven feet from the floor; Naylor was sitting on a board three feet from the floor, and some twenty to twenty-four inches from the upright holding live switch and fuse, which were to his back and directly behind him. From where his body rested on board to fuse plug, it was four feet up and back twenty to twenty-four inches, and to reach fuse it is obvious Naylor would have been compelled to partially, or

wholly, turn his body and at the same time lift his arm above his head and backward—a physical exertion that would have extended from his head to his feet; and yet Gibson, who was standing within fourteen inches of him, and facing him, did not see him do such a thing. In effect, Gibson says that if he did such a thing he did not see him do it. He further says the position of Naylor's body and hands were practically the same after death as before.

If we assume it was possible for Naylor to have done such a thing, in the face of the statement by Gibson that he did not see him do it, his act would imply purpose and design, inasmuch as there is a total absence of any evidence of any necessity for his doing so. We think under the law the presumption that Naylor's death was accidental rather than suicidal must be indulged.

As was said in *Milwaukee Western Fuel Co.* v. *Industrial Commission, supra:*

"But has the presumption against suicide no force in the case when the evidence is not consistent with it? The presumption has the usual legal effect given to presumptions, namely, of calling for proof of the fact which it negatives; that is what is meant when the courts say, as this court said in *Sorenson* v. *Menasha Paper Co.,* 56 Wis. 342, 14 N. W. 446:

" 'The presumption . . . that the deceased committed suicide cannot be indulged in as a mere presumption, without any fact or circumstance upon which it can be logically predicated; for the presumption of law is in favor of life, and the natural desire and struggle to preserve rather than to destroy it . . . ' "

As was said above, where the facts showing how the death occurred are not ascertained, it is a question of mixed law and fact.

"Whether the death is accidental or intentional, whenever there is any evidence bearing upon the

point, is a question of fact for the jury or the court.''
May on Insurance, § 325.

See, also, *Johns* v. *Northwestern Relief Assn.,* 90
Wis. 332, 41 L. R. A. 587, 63 N. W. 276.

Under the law, where the minds of reasonable per-
sons, upon all the evidence submitted, may come to
different conclusions, the rule is that the case shall
not be taken from the jury but left to their deter-
mination.

According to the evidence, four others of the em-
ployees were knocked down by the same electrical
current that electrocuted Naylor. It is not inconceiv-
able that one of these might have accidentally
dropped something against the fuse plug and thereby
precipitated the current into the body of Naylor.

All the while it should not be forgotten that plain-
tiff does not have to prove defendant was guilty of
any negligence. Defendant's negligence or care does
not enter into the case. This is the rule announced
in the Egich case, in this language:

''It follows, therefore, that the negligence of the
employer in failing to furnish the employee a safe
place to work, or safe tools and implements with
which to work, is not the ground upon which his lia-
bility is based, inasmuch as he is liable even though
he may furnish the employee a safe place to work
and safe tools and implements with which to work, if,
notwithstanding, the employee is injured or killed by
an accident due to a condition or conditions of the
occupation.'' 22 Ariz. 543, 199 Pac. 132.

The defendant places great reliance upon the de-
cision of the court in the case of *Southwest Cotton
Company* v. *Ryan, supra,* and contends it is decisive
of the question in this case in its favor. In the Ryan
case the plaintiff relied upon admissions, or what he
regarded as admissions, in the answer as obviating
the necessity of his showing how or in what manner
he was hurt. In other words, he contended that de-

fendant admitted in its answer that the accident causing his injury was due to a condition of his occupation, and did not therefore attempt by evidence to establish that necessary essential of his cause of action. We held that the answer did not admit but expressly denied such fact, and that plaintiff "introduced no evidence nor offered any in support" of this material allegation of his complaint.

The question of the burden of proof in the Ryan case arose in this way: The court had instructed the jury that, because the defendant had set up in its answer the defense of plaintiff's negligence as the cause of his injury, the burden of establishing such defense was upon defendant. We held the instruction was erroneous, and in the course of the opinion pointed out that the burden of showing the accident was not caused by his negligence never shifted, but is always on the plaintiff, unless the facts rest within the knowledge of the opposite party. The question of the sufficiency of plaintiff's evidence to sustain the burden of proof was not involved in the Ryan case. We did, however, comment upon the fact that Ryan, from the circumstances, must have known better than anyone else how he was injured.

The injured party in this case did not survive to tell the tale, but if he had survived, we are not certain that he would have known any better than Gibson how the accident was caused.

The general rule in the law of evidence as to proof of negative facts is very well stated in 22 C. J. 80, § 23, as follows:

"The party whose contention requires proof of a negative fact has the burden of evidence to prove that fact. In deciding, however, what *quantum* of evidence shall be deemed sufficient, the practical limitations on proof imposed by the nature of the subject matter of the relative situation of the parties will be considered, and the burden of evidence will be sustained by proof which renders probable the existence

of the negative fact; circumstantial evidence being sufficient, and nothing in the nature of a demonstration being required.''

The text is well supported by the citations in note. The rule is applicable to civil and criminal actions alike, and unquestionably is the rule that should be applied to compensation cases.

The judgment is affirmed.

LAMSON, Superior Judge, concurs.

NOTE.—Chief Justice A. G. McALISTER, being disqualified, took no part in the decision of this case. The Honorable RICHARD LAMSON, Judge of the superior court of Yavapai county, Arizona, was called to sit in his place and stead.

LYMAN, J., (Dissenting).—I do not concur in the opinion of the court.

From the premise, that ''the facts showing how the death occurred are not ascertained,'' the conclusion that the plaintiff has borne the burden of proving that death was not caused by the negligence of the deceased, seems to me to be strangely illogical and illegal, not in accord with the former decisions of this court, and in conflict with the statute.