FRED T. LAROU, PETITIONER

*vs.*

TABLE TALK DISTRIBUTORS, INC.

AND

AMERICAN MOTORISTS INSURANCE CO.

Androscoggin.    Opinion, January 22, 1958.

*Jacob Agger,*
*Edward Newman,* for plaintiff.

*Robinson, Richardson & Leddy,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

DUBORD, J. This is an appeal from a *pro forma* decree of the Superior Court confirming a decision of the Industrial Accident Commission awarding compensation to the plaintiff.

The petition is in the usual form and alleges an accident occurring on February 7, 1957, while petitioner was working as a driver-salesman in the employ of Table Talk Distributors, Inc., at Auburn, Maine. The petition alleges knowledge of the accident on the part of the employer or notice thereof. It is also alleged that the accident arose out of and in the course of employment.

The answer is a general denial, but the principal defense is that the accident did not arise out of and in the course of petitioner's employment.

At the hearing before the Commissioner, it was contended by the insurer that the relationship of employer and employee did not exist, but that the petitioner was in fact an independent contractor.

The Commissioner found that there was a relationship of employer and employee, and counsel for the insurer, in his brief concedes that this finding was a question of fact and, therefore, final.

It appears from the evidence that the petitioner was employed by Table Talk Distributors, Inc., as driver-salesman. It was his duty to pick up a quantity of pies in Portland by a given hour on each day. His principal territory was in Waterville and its environs. However, the employer testified

that the petitioner had authority to sell the pies at any place and if any other salesman complained of encroachment on his territory, that was a matter to be worked out between the parties involved. The employer furnished the motor truck used by the petitioner. His compensation was $25.00 per week, plus a commission on sales.

On February 7, 1957, the petitioner was on his way back to Portland at the end of the day. Upon arriving on Minot Avenue in Auburn, he parked his vehicle on the westerly side of the highway, near a street light opposite a filling station and diner located on the other side of the highway and known as Jimmy's No. 1 Filling Station, and Jimmy's Diner. Minot Avenue runs generally north and south. The gasoline station lies southerly of the diner and one portion of the station is only about eight feet from the diner. The petitioner testified that he frequently stopped at this gasoline station, and that he was in the habit of selling pies to a man named Brown, an employee at the station. On the day in question, after the petitioner had parked his truck, he left the truck, accompanied by his wife, and walked in a diagonal direction approximately 90 to 100 feet to the door of the gasoline station. Brown was absent, but upon being contacted by telephone said he wanted two pies. Thereupon petitioner returned to his truck for the pies, brought them back to the station, and received his pay from one of the attendants. The day's work was practically done, and the petitioner then left the gasoline station and walked to the door of the diner, accompanied by his wife, a distance of about 70 feet. In the diner he had a glass of beer and his wife had a light lunch. They then left the diner and started for the truck. From the door of the diner to the truck, there was a distance of between 60 and 70 feet. Petitioner's wife preceded the petitioner on the way back to the truck. While at a point about 3 feet from the truck, the petitioner was struck by an oncoming automobile and seriously injured.

The insurance carrier contends that the finding of the Commissioner that the plaintiff crossed the street for the purpose of selling pies is not supported by the evidence; and vigorously contends that the accident did not arise out of or within the scope of the employment, because the petitioner had deviated from his employment when he went from the gasoline station to the diner.

The Commissioner found for the petitioner upon all of the issues. He found that the employer had knowledge of the accident. This finding is supported by the evidence.

The Commissioner made this finding:

"We find that petitioner went to Jimmy's Filling Station No. 1 to sell pies to Mr. Brown and that under the job arrangement it was permissible for him to do so and was in the interest of his employer as well as in his own interest for the additional commission he would receive. It follows that this action was in the course of his employment."

This finding is supported by the evidence.

Quoting further from the decision, the Commissioner said:

"He (the petitioner) made a return trip to the truck to get the desired merchandise, came back to deliver it at the station, and was paid for it. He then went to the diner with his wife, who had come to the station with him and waited while he returned to get the pies. It was nearly 6:00 P.M. and he had yet to drive back to Portland. To us it was a very natural thing for him to do to get refreshment before finishing his trip. Mr. Pavlakis (the employer) stated that he could eat when and where he wanted to although the company did not pay for his meals. - - - - If petitioner had gone some distance from his course and been injured while off the course, rather than to a place immediately adjacent to the filling station where he sold his goods it might constitute an unreasonable departure or deviation which gave rise to an ex-

posure not contemplated in the course of his employment, but such is not the case here. Taking refreshment in this case did not take employee out of the course of his employment.

"Moreover, even if taking refreshment as this petitioner did is to be considered as a deviation from the course of employment, when he had left the diner and started back to his truck he was again in the course of his employment and any deviation had ended. Certainly this is true when he had arrived within 2 or 3 feet of the truck where he was struck. He had to get back to the truck from the filling station and it cannot be said that the point of impact was any different than it would have been had he come from the station instead of from the diner. To hold that the time he was returning was a few minutes later than it would have been had he gone directly back from the station and thus that he was not in the course of his employment would not be a liberal interpretation of the provisions of the Act. He had no more calls to make but had to return to Portland and that trip was part of his employment.

"The nature of petitioner's work required that he use the highway and thus the case falls within the exceptions to the general rule that accidents on a public highway are not compensable.

"We believe, and therefore find, that the accident arose out of and in the course of employment."

"This court has held that the great weight of authority sustains the view that the words 'arising out of' mean that there must be some casual connection between the conditions under which the employee worked and the injury which he received; and that the words 'in the course of' refer to time, place and circumstances under which the accident occurs. *Westman's Case,* 118 Me. 133. In other words, it must have been due to a risk to which the deceased was exposed while employed and because employed by the employer. Both ele-

ments must appear, and in the hearing before the commission the burden of proof rests upon the claimant to prove the facts necessary to establish a right to compensation under the Workmen's Compensation Act. *Mailman's Case,* 118 Me. 172." *Taylor's Case,* 126 Me. 450, 451, 139 A. 478.

"To arise out of the employment the injury must have been due to risk of the employment. To occur in the course of the employment the injury must have been received while the employee was carrying on the work which he was called upon to perform, or doing some act incidental thereto. The accident may occur in the course of the employment although it may not arise out of it. The compensation depends on the fact that the accident not only takes place in the course of the employment, but also that it arises out of the employment. *John D. Wheeler's Case,* 131 Me. 91. There must be some casual connection between the conditions under which the employee worked and the injury which he received. If the injury is sustained by reason of some cause that has no relation to the employment it does not arise out of it. *Gouch's Case,* 128 Me. 86; *Mailman's Case,* 118 Me. 172; *Saucier's Case,* 122 Me. 325. The accident to be compensable must occur within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties, or engaged in doing something incidental thereto." *Boyce's Case,* 146 Me. 335, 341, 81 A. (2nd) 670.

"However loath courts may have been to class a hazard of the streets, common to all users thereof, as producing compensable injury if accident thereon occur to an employee, the consensus of a great majority of the State courts is that where the employment requires the employee to travel on the highway, and accident causes injury to the latter when he is using the highway in pursuance of his employment, or in doing some act incidental to his employment, with the knowledge and approval of

his employer, such injury is compensable." *Kimball's Case,* 132 Me. 193, 195, 168 A. 871.

"An identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial. In some jurisdictions, the course of employment is deemed resumed if, having completed his personal errand but without having regained the main business route, the employee at the time of the accident was proceeding in the direction of his business destination." Larson's Workmen's Compensation Law, Volume 1, § 1900.

"Whether a deviation by a traveling employee from his usual or prescribed route, schedule, or mode of travel constitutes such a departure from the scope or course of his employment as to deprive him of the right to compensation for an injury sustained during or as the result of such deviation depends ordinarily upon the extent, purpose, or effect thereof. An unauthorized deviation may preclude recovery of compensation for any injury caused by an added peril to which the employee is thereby exposed during the period of the deviation, but the compensability of an injury occurring after the deviation has ended and the employee is again in the course of his employment is not ordinarily affected thereby." 58 Am. Jur. 734, § 227. Workmen's Compensation.

"An employee does not necessarily depart from the course of his employment by reason of a slight deviation from his work or from the locus of his employment, for some purpose personal to himself, so as thereby to deprive him or his dependents of the right to compensation for an injury sustained during or as the result of such deviation. A deviation from his work or the locus of his employment to serve some purpose of his own may, however, under some circumstances, take a workman out of the course of his employment. In some cases, where a

servant had deviated from his employment to go on a personal errand, but has accomplished his purpose, and has, at the time an accident occurs, started back toward the place where he is to do some act or perform some service for his employer, the injury has been held to have arisen out of and in the course of the employment, notwithstanding such deviation. In other cases, however, compensation has been denied. 58 Am. Jur. 744, § 240. Workmen's Compensation.

See also Annotation in 76 A. L. R. 357, where it is indicated by numerous decisions that it is not every slight deviation from an employee's duty that would deprive him or his dependents of their right to compensation; and that the question whether an act of an employee arose out of and in the course of the employment depends ultimately upon the facts and circumstances of each case.

In the case at bar, if there was a deviation, it did not increase the perils to which the employee was exposed; and, moreover, the Commission was correct in finding that if a deviation had occurred, that when the employee started from the diner to return to his truck, he was again in the course of his employment.

The Legislature has imposed a liberal construction rule. Section 30, Chapter 31, R. S., 1954.

So many times has this court said that in the absence of fraud, the findings of the Industrial Accident Commission, upon questions of fact, are final if supported by some competent evidence and reasonable inferences therefrom, that citation of decisions is unnecessary.

The findings of fact by the Commissioner are supported by the evidence and his legal conclusions are sound.

*Appeal Dismissed.*
*Decree Below Affirmed.*
*Allowance of $250 ordered to petitioner for expenses of appeal.*