(No. 13253.—Judgment affirmed.)

THE SPARKS MILLING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CORA J. MAY, Exrx. Defendant in Error.)

*Opinion filed June 16, 1920.*

1. WORKMEN'S COMPENSATION—*when death is presumed to have been accidental.* Where there is no direct evidence as to what caused the death of an employee and the circumstances are such that the death must have been by suicide, murder or by accident, in the absence of any evidence of suicide or murder it must be presumed that the death was accidental.

2. SAME—*when an injury arises out of employment.* An injury arises out of the employment, within the meaning of the Compensation act, when the accident results from a risk reasonably incidental to the employment.

3. SAME—*burden is on claimant to show injury arose out of employment—circumstantial evidence.* The burden is upon an executrix who claims compensation for the death of an employee to show that the death was caused by an accidental injury arising out of the employment; but this proof may be by circumstantial as well as by direct evidence.

4. SAME—*when conclusion that death resulted from injury arising out of employment is justified.* Where an employee whose work was to sweep and clean a mill was last seen alive while he was sweeping near the windows on the fourth floor of the building, the weather being warm, and was shortly afterwards found in a

dying condition on the pavement below the windows, the conclusion that the death resulted from an injury arising out of the employment is justified, where there is no evidence tending to show suicide but sufficient evidence to warrant finding that the windows were open and that the employee was either knocked from one of the windows by a swinging sifter, or fell from another. window while, according to a proved custom, he was getting fresh air.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

SAMUEL A. HARPER, for plaintiff in error.

GILSON BROWN, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

October 12, 1918, William F. May suffered injuries at the mill of plaintiff in error which resulted in his death. He had been employed by plaintiff in error for about twelve years. At the time of the accident he was employed as a sweeper and cleaner. It was his duty to sweep the floors and clean up the dirt and mill dust, to brush and clean the machinery, and generally to keep the entire mill and its equipment clean. The mill consisted of four floors and a cupola. On the morning of the accident he left home about 6:30, which was his usual time, and went to the mill, where he changed clothes and went to work at 7:00 o'clock. He talked with Sam C. Willett, second miller, about 7:00 o'clock and again about 7:15. Willett saw the deceased cleaning around the machinery on the fourth floor about 7:30. On this floor there is considerable machinery, including four swinging sifters. These sifters work back and forth with sufficient force to knock a man over if he gets in their way. The south end of the room on the fourth floor is twenty-two feet wide. At this end there are three windows. Across the west window is a table about three feet high. The window sill is about a foot high, leaving about two feet of

the lower half of the window below the table.   Immediately outside this window is the platform of a fire-escape, which is about on a level with the mill floor.   The middle window on the south side is about ten feet east of the window just described.   Near the west window is a wheat-scourer.   The west sifter is about twelve feet from the west window and the sifters extend eastward, the east sifter being opposite the east window.   One of the sifters extends out to within two or three feet of the edge of the middle window.   There is no table and no fire-escape at the middle window.   The air inside the mill was usually filled with dust, and it was customary to keep all the windows open when the weather permitted.   The proof shows that the weather was clear and warm on the day of the accident, and while there is no proof that the windows were open before the accident, many witnesses testify that they found them open immediately after the accident.   We think the evidence clearly warrants the finding that the windows were open at the time of the accident.   When Willett last saw and talked to deceased, at 7:30 o'clock, the latter was working between the second and third sifters, which would place him practically opposite the middle window.   About 8:00 o'clock May was found lying on the pavement, below and slightly to the east of the west window.   No one saw him fall, but Fred Collins stood within fifteen feet of the place where he fell.   He was attracted by the sound of the body striking the pavement and turned and saw deceased lying on his back, his head toward the mill and about six feet from the wall..   He was unconscious, his legs were broken and his shoulders and face bruised.   He did not regain consciousness and made no statement.   The Industrial Commission found that the injury resulting in his death arose in the course of and out of his employment and awarded compensation.   On *certiorari* the circuit court of Madison county confirmed this award.   By leave of this court this writ of error is prosecuted to review that judgment.

Only one thing is certain and clear in this case: that William F. May was found in a dying condition, lying on the pavement below the windows of the fourth floor of this mill. There may be at least three theories, any one of which will account for his death. It might have been suicide; it might have been murder; it might have been accident, and such accident may or may not have arisen out of the employment. All who saw deceased on the morning of the accident,—his family and his fellow-workmen,— testify that he was in his usual good spirits, and that so far as was known he had no enemies. There is no evidence of suicide or murder, and therefore the presumption against the commission of a crime is sufficient to support the finding of the commission that this death resulted from accident. (*Humphrey* v. *Industrial Com.* 285 Ill. 372; *In re VonEtte,* (Mass.) 111 N. E. 696; *Steers* v. *Dumewald,* (N. J.) 89 Atl. 1007; *State* v. *District Court,* (Minn.) 164 N. W. 582; *Bekkedal Lumber Co.* v. *Industrial Com.* (Wis.) 169 N. W. 561.) Where the evidence shows deceased to have been in good health and there is a complete absence of evidence showing suicide, it must be presumed that the death was accidental. *Wilkinson* v. *Ætna Ins. Co.* 240 Ill. 205; *Wiscaless* v. *Hammond, Standish & Co.* (Mich.) 166 N. W. 993.

We think it cannot be seriously contended that the injury causing this death did not arise in the course of the employment. The only serious question presented is whether or not the injury arose out of the employment, and this question is not without its difficulty. An injury arises out of the employment, within the meaning of our Workmen's Compensation act, when the accident results from a risk reasonably incidental to the employment. (*Dietzen Co.* v. *Industrial Board,* 279 Ill. 11; *Mueller Construction Co.* v. *Industrial Board,* 283 id. 148.) The burden was on the executrix to show that the death of May was caused by accidental injury arising out of the employment, and to show

293 — 23

it by direct and positive evidence or by evidence from which such inference could be fairly drawn. (*Savoy Hotel Co. v. Industrial Board,* 279 Ill. 329; *Edelweiss Gardens v. Industrial Com.* 290 id. 459.) The proof of these facts may be by circumstantial as well as by direct evidence. When it is said that the claimant must prove her case, it is not meant that she must necessarily prove it by direct evidence and that somebody actually saw what took place, because in many cases that is impossible. While the commission cannot surmise, conjecture or guess its conclusion, yet it may draw an inference from proven facts, so long as it is a legitimate inference. (*Peoria Railway Terminal Co. v. Industrial Board,* 279 Ill. 352.) We think the facts proven clearly warranted the commission in finding that the windows on the fourth floor of the mill were open, that deceased was employed at his regular duties on this floor, and that he was either knocked from the middle window by one of the sifters or that he fell from the fire-escape while there recovering from exhaustion caused by the heat and dust inside the mill. Finding, as we do, that there was evidence in the record justifying these conclusions, it necessarily follows that the injuries resulting in this death arose out of the employment of deceased. Our conclusions in this regard find support in the following among other authorities:

In *Ohio Building Vault Co. v. Industrial Board,* 277 Ill. 96, a night watchman was found seriously injured. The evidence strongly tended to show that his injuries were the result of a felonious assault. There were no eye-witnesses and no direct proof as to why the assault was made. We held that the facts justified the conclusion that the assault was made for the purpose of burglarizing the building, and that, therefore, the injury arose out of the employment.

In *Peoria Railway Terminal Co. v. Industrial Board, supra,* a fireman suffering from a pre-existing disease fell from his engine cab and sustained injuries resulting in his

death.   We held that the facts justified the inference that the fall, and not the disease, was the proximate cause of the fireman's death.

In *Mechanics Furniture Co.* v. *Industrial Board,* 281 Ill. 530, a night watchman was found dead upon the premises with a bullet wound in his body.   There were no eye-witnesses to the killing and there was no direct evidence showing who shot the watchman or the reason for shooting him.   We held the facts and circumstances justified the commission in holding that the shooting was done by a marauder who intended to burglarize the building, and that, therefore, the injury arose out of the employment.

In *Smith-Lohr Coal Mining Co.* v. *Industrial Com.* 286 Ill. 34, a motorman was found dead on his motor car and the car was running without control.   On investigation it was found that his neck was broken.   His cap was found about a mile away, where the ceiling of the passageway was low.   There were no eye-witnesses to an accident in that case and there was no direct proof showing how or where the neck of the deceased was broken.   We held that the evidence justified the inference by the Industrial Commission that the head of the deceased had come in contact with the ceiling of the passageway and that his neck was broken by the force of the contact.   The decision of the Industrial Commission that his death arose out of the employment was sustained.

In *Stephens Engineering Co.* v. *Industrial Com.* 290 Ill. 88, an employee was found on the ground below the door leading from the bin-floor of an elevator.   There was a pulley fastened near the top of this door for the purpose of hauling up heavy articles.   On the outer wall of the building, near the door, was a fire-escape.   There were no eye-witnesses to the accident, but we held it fair to presume from the evidence that the deceased attempted to swing by the rope carried by the pulley onto the fire-escape, and that for some reason he lost his balance and fell to the ground.

In *Walsh Teaming Co.* v. *Industrial Com.* 290 Ill. 536, a truck driver was found pinched beneath the loading platform and the freight elevator. There were no eye-witnesses as to what the deceased was doing at the time of or immediately prior to the accident, but we held that the evidence justified the holding of the commission that the injury arose out of the employment.

In *In re VonEtte, supra,* a compositor of a newspaper was last seen alive about 11:00 P. M. At 3:45 o'clock the next morning his dead body was found upon the ground, six stories below the floor where he worked. The evidence showed it to be the custom of the employees to go upon the roof of an adjoining building for the purpose of getting fresh air. In deciding whether or not the injury causing VonEtte's death arose out of his employment the Supreme Court of Massachusetts said, among other things: "If this claimant were required to prove affirmatively all the facts and circumstances attending her husband's death by direct evidence it is plain that her claim would fail. But she is not limited to such proof. * * * The accident happened upon the premises of the employer, and we think, in view of the practice which might have been found to exist under which the men went upon the roof for fresh air, that the act of the deceased in going there on a warm night was not necessarily outside his employment but could have been found to be incidental thereto." And so in the instant case it was proven to be the established custom of the men to go to the windows for fresh air when the heated atmosphere became heavily saturated with dust. This case is clearly distinguishable from those cases where the employee was disobeying orders or otherwise misconducting himself.

There is nothing in this record that justifies any other conclusion than the one reached by the Industrial Commission. The judgment of the circuit court is affirmed.

*Judgment affirmed.*