# SPRING CANYON COAL CO. et al. v. INDUSTRIAL COMMISSION OF UTAH.

## No. 3693.   Decided September 22, 1921.   (201 Pac. 173.)

1.  MASTER AND SERVANT—QUESTION OF SUBSTANTIAL EVIDENCE IN COMPENSATION CASE REVIEWABLE. Under Industrial Act, 1917, providing for review of the Industrial Commission's decisions, and Const. art. 1, §§ 7, 11, whether a finding on which an award of the Commission is based is supported by substantial evidence is reviewable as a question of law, and whether an inference may be deduced from a particular fact is also a question of law for the reviewing court.

2.  MASTER AND SERVANT—INFERENCES HELD NO BASIS FOR COMPENSATION AWARD. If, from the facts before the Industrial Commission, two different inferences may be deduced, one of which authorizes the award and the other of which does not, both inferences are equally reasonable, and the Commission may not arbitrarily disregard one of the inferences and choose the other as supporting its award, for, in such circumstances, the inferences meet and destroy each other and neither has any probative effect.

3.  MASTER AND SERVANT—FINDING OF COMPENSABLE DEATH BECAUSE OF EMPLOYMENT HELD UNWARRANTED. The fact that an employee was killed by an insane fellow employee, without more appearing, *held* not to justify the inference, to support award under C. L. 1917, § 3113, for death, that the fellow employee's act was directed against deceased "because of his employment."

4.  MASTER AND SERVANT—COMPENSABLE INJURY. An injury which is received in the course of the employment does not necessarily arise out of the employment.[1]

5.  MASTER AND SERVANT—LIMITATIONS AGAINST COMPENSATION CLAIM NOT SUBJECT OF WAIVER. The Industrial Commission cannot waive the statute of limitations as respects a claim against the State Insurance Fund.[2]

---

[1] *Twin Peaks Canning Co.* v. *Industrial Commission*, 57 Utah 589, 196 Pac. 853.

[2] *Interurban Const. Co.* v. *Industrial Commission*, 58 Utah —, 199 Pac. 157.

Proceeding under the Workmen's Compensation Act by Marie Como, to recover compensation for the death of her husband, Frank Como, employee, opposed by the Spring Canyon Coal Company, employer, and the State Insurance Fund. Compensation was awarded, and the employer and the State Insurance Fund bring a writ of review.

AWARD SET ASIDE AND ANNULLED.

*Bagley, Fabian, Clendenin & Judd,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *John R. Robertson,* Asst. Atty. Gen., for respondent.

FRICK, J.

On August 27, 1920, one Marie Como, hereinafter called applicant, made application to the Industrial Commission of Utah, hereinafter styled Commission, in which application she asked that the Spring Canyon Coal Company, as employer, or the State Insurance Fund, be required to pay compensation for the benefit of herself and her three minor children as the dependents of one Frank Como, her former husband, who, she alleged, suffered a personal injury from which he died on the 11th day of July, 1917, while he was in the employ of said company as a coal miner, and which injury and death she alleged arose out of and in the course of his employment. After a hearing two of the commissioners awarded the applicant compensation, which, including funeral expenses, amounted to $2,168.24. One of the commissioners dissented, upon the ground that the evidence was insufficient to authorize the Commission to award compensation in this case. Both the company and the State Insurance Fund, hereinafter called plaintiffs, applied to the Commission for a rehearing, which was denied, and they join in this application which is in the usual form, and ask that this court review the proceedings of the Commission, and that upon such review the award

be set aside and annulled as not being authorized by our Industrial Act. The Commission filed a demurrer to the writ of review, and the case was submitted upon the demurrer.

The facts concerning the injury and death of the deceased were stipulated into the record before the Commission, and are as follows:

"That Frank Como, deceased, was, on the 11th day of July, 1917, employed by the Spring Canyon Coal Company at Storrs, Utah, as a coal miner; that while employed decedent was attacked and killed by a fellow employee, John Augustino, at 9:45 a. m.; that the deceased was employed by the Spring Canyon Coal Company at the time of his death, an employer subject to the provisions of chapter 100, Laws Utah 1917."

In addition to the foregoing stipulated facts there appear in the record copies of statements as follows: A statement from W. L. Sutherland, who, it seems, was the attending physician, who states that the deceased was killed as stated in the stipulation of facts, and that "John Augustino was bound over to await the action of the grand jury, and we understand has since been committed to the State Mental Hospital at Provo, Utah." It further appears from the statement that Frank Como was injured on July 11, 1917; that he was "hit on head with coal shovel several times by partner in mine"; that the injuries consisted of "several deep gashes about head, skull fractured," and that "death was instantaneous." There is also a copy of an unidentified letter purporting to be from the superintendent of the State Mental Hospital at Provo, Utah, which is addressed to the "manager of the State Insurance Fund." In that letter it is stated that one John Arostino was received as a patient at the State Mental Hospital on "August 1, 1917 * * *; when received here he was in an extreme catatonic state, from which he has apparently recovered. He is, however, afflicted with dementia præcox from which we cannot expect recovery. There is no question in my mind that he had dementia præcox for considerable time before he committed crime." We assume the Arostino referred to in the letter to be the same individual who in the record is otherwise called Augustino.

In view of the foregoing state of the record there is a sharp

conflict between the attorneys for plaintiffs and the Attorney
General, who represents the Commission, and incidentally the
applicant, with respect to what ultimate facts the evidence
which was before the Commission established. The attorneys
for plaintiffs contend that there was no evidence before the
Commission except what is contained in the stipulation of
facts, while the Attorney General, stating it in his own lan-
guage, insists that the probative facts before the Commission
were the following:

"That Frank Como, deceased, was killed on the 11th day of July,
1917, by a fellow employee; that this fellow employee was on the
1st day of August, 1917, committed to the State Mental Hospital.
It was admitted that the decedent at the time he met his death was
an employee of Spring Canyon Coal Company, and that at the time
of the accident was engaged in the actual performance of his em-
ployment as a miner."

In view of the facts stated by the Attorney General he
states his legal conclusion thus:

"Under these circumstances the question is not, as the plaintiffs
contend, whether the accident arose out of and in the course of the
employment, but was the Commission, under the circumstances,
justified in inferring that Frank Como was killed by accident aris-
ing out of and in the course of the employment—two very different
questions."

In view of the conflicting views of counsel we have given
all of the material facts appearing in the record although it
may well be, as contended by them, that some of the state-
ments appearing in the purported statements and in the let-
ters, strictly speaking, may not be competent evidence. For
the burden is again upon the applicant to prove that the act
as stated by the Attorney General have been established.

. In making the foregoing statement we have excluded other
jurisdictional facts, such as the marriage of the decedent and
the applicant and the birth of children, etc., none of which is
questioned.

Counsel for plaintiffs insist that the foregoing facts, to-
gether with the inferences that may be legitimately deduced
therefrom, are wholly insufficient to justify the award made
by the majority of the Commission. At the time the deceased
was killed, as hereinbefore stated, our statute (Comp. Laws

Utah 1917, § 3113) provided that compensation shall be made to an employee who receives personal injury which is caused "by accident arising out of and in the course of his employment." The statute also provided:

"The words 'personal injury by accident arising out of and in the course of employment' shall include an injury caused by the willful act of a third person directed against an employé because of his employment." Section 3112.

Counsel for plaintiffs contend that the burden is upon the applicant to prove that the injury was caused by an accident arising out of and in the course of the employment, and further, that where it is shown without dispute, as here, that the injury which caused death was inflicted by a third person the burden is again upon the applicant to prove that the act of such third person was directed against the employee (the deceased in this case) because of his employment.

While the Attorney General concedes that the burden is upon the applicant to establish the facts as contended for by counsel for plaintiffs, he nevertheless insists that the ultimate facts may be inferred from the evidentiary facts and circumstances, and that the facts hereinbefore referred to were sufficient to authorize the Commission to make the award. He insists that inferences may be deduced from circumstantial evidence as well as from positive or direct statements. He further contends that, where two inferences may be deduced from the established or conceded facts and circumstances, one of which is favorable to the applicant and the other against him, and both of which inferences are equally reasonable, the Commission may elect which inference it will adopt, and that we are bound by the inference the Commission adopts. In referring to plaintiffs' contentions and to the "weakness of plaintiffs' position," the Attorney General's views are reflected in his printed brief in the following words:

"They say we can easily infer that the assault was provoked by some personal grievance against Como 'due to causes wholly disconnected from their employment.' Of course, this is true, but is it not just as easy to infer that Como's death arose from a dispute which arose out of the employment as it is to infer that the assault was due 'to some personal grievance against Como?' Surely

it is.  So it is clearly seen that the finding of the Commission that the accident arose out of and in the course of the employment is based wholly upon an inference, and must, of necessity, be based upon an inference.  How are the plaintiffs going to show that this inference is wrong?  How can the court set the finding of the Commission aside without substituting its inference as to what happened for the Commission's inference as to what happened?"

It is only fair to the Attorney General to add that at the hearing upon the demurrer he, in his oral argument, further elaborated his position by stating that, while plaintiffs' contention that where two inferences may be deduced from facts and circumstances, one of which would make the employer liable while the other would not, the ultimate fact fixing liability would not be considered as established in courts of justice, yet the same rule does not apply to the Commission in view that it may choose any inference which is reasonable although another inference from which an opposite conclusion might be deduced is equally reasonable.  In other words, all that is necessary to sustain the finding of the Commission is that the inference it adopts, and upon which the finding is based, is as reasonable as the opposite inference.  The Attorney General's contention, to our minds, is clearly fallacious and finds no support in law.  The mere fact that the Commission arbitrarily chooses one inference rather than the opposite, where the probabilities are equal, still leaves the fact to be established without any substantial evidence.  Again, he overlooks the fact that the statute contains both the source and the limit of the Commission's power and duty.  He also ignores the further fact that the statute, in express terms, provides that—

"Any party affected thereby [by the Commission's decision] may apply to the Supreme Court of this state for a writ of certiorari or review * * * for the purpose of having the *lawfulness* of the original award or the award on rehearing inquired into and determined."   (Italics ours.)

The statute further provides that in reviewing the Commission's decisions this court shall ''determine whether or not:  (1)   The Commission acted without or in excess of its powers.  (2)   If findings of fact are made, whether or not such findings of fact support the award under review.''   The

statute assumes that the findings of fact reflect the evidence, and hence, if there is no substantial evidence in support of any material fact found, the decision is not 1, 2 supported by the findings of fact. The Attorney General also overlooks the important fact that, in case the award for any reason is not supported by law, it is our duty to so declare. If, therefore, two different inferences may be deduced, one of which authorizes the award and the other not, and both inferences are equally reasonable, the Commission may not arbitrarily disregard. one of the inferences and choose the other. In such circumstances the inferences meet and destroy each other, and neither has any probative force or effect. The ultimate fact, therefore, which the inference, if there were only one, would establish is without any support in the evidence, and, if the Commission, nevertheless, makes an award upon the strength of the inference, the award is lacking in two essentials: (1) That it is without support in the evidence; and (2) that it is unlawful, because to require one person to pay money or something of value to another arbitrarily and without any legal evidence to support the requirement is taking property from one person and giving it to another without sanction of the law, and is therefore unlawful.

There is, however, still another very important element to consider, which is that we are bound to construe and apply every law in the light of and in accordance with the fundamental law of the state. The people of this state in their sovereign power have said that "no person shall be deprived of life, liberty or property without due process of law," and that "all courts shall be open and every person, for an injury done to him in his person, property or reputation shall have remedy by due course of law." Const. Utah, art. 1, §§ 7, 11. Those provisions are mandatory and must be obeyed. If the Commission, therefore, acts without any substantial evidence and by its acts deprives some person of property or property rights, its acts are void and it cannot be heard to say to this court "although our inferences are without probative force, as matter of law, yet you are bound

by them.'' In order to justify such a conclusion we should not only be compelled to entirely abdicate the supervisory power the statute has given us, but we should have to violate the command of the people which they have given us in explicit terms in the fundamental law of the state.

Lest we be misunderstood, we desire to add here that by anything we have said we do not claim that we can dictate to the Commission what probative force or effect they shall give to any inference that may be legitimately deduced from the facts and circumstances, direct or circumstantial, that are made to appear in any case. Nor can we interfere with the weight they shall give to the evidence or to the credibility of the witnesses, but what we mean is that when there is purely a question of law presented, and which is necessarily involved in the decision or the award, it becomes our duty to determine that question. Whether an inference may legitimately be deduced from a particular fact, or from a state of facts, or from circumstances, is purely a question ·of law; while the probative force or effect that shall be given to the inference, if, as a matter of law, it may legitimately be deduced from the given fact, or state of facts, or circumstances, is a question of fact. Whether the inference in question may be deduced as claimed is therefore a question of law which we must determine as such.

If, therefore, all the facts and circumstances in this case are considered, may it legitimately be inferred therefrom that the deceased was injured by an accident arising out of his employment? And may it be further inferred that the act which caused his death was ''directed against him because of his employment?'' It frequently happens that an employee is found dead at or near his place of work. Usually there are some facts and circumstances from which it may be inferred that the death resulted from injuries inflicted by violence. There may also be and usually are, marks or bruises, or other indications, found upon the body of the deceased from which it may be inferred what caused them. If the deceased worked in a mine there may be evidence that a rock or other material fell upon him from the roof, or from some

other part of the mine. Again, timbers, if there were such, may have given way and fallen upon him, or have otherwise injured him. If he was working in a factory at or near moving machinery or other objects there may be some fact or circumstances which indicates that he was injured by the moving machinery or the other objects referred to. The reader may readily supply many other instances where injury may have been inflicted which resulted in death, and where the cause of death must be inferred from the facts and circumstances as they are made to appear. Where, however, as here, the facts are undisputed with respect to what agency caused death, and it is conceded that the injuries which resulted in death were inflicted by a third person, then the cause of death is clearly established, and there is nothing left to inference. Is there any fact or circumstances, therefore, from which it may legitimately be inferred that the injuries inflicted upon the deceased and from which he died arose out of his employment. After a most careful consideration of all the facts and circumstances in evidence in this case we can discover nothing from which such an inference may legitimately be deduced. No one knows what induced Augustino to assault and to kill the deceased. Moreover, the record is absolutely devoid of any fact or circumstances from which it may legitimately be inferred that Augustino's act was directed against the deceased "because of his employment." It is quite as reasonable to assume or to infer that the assault upon the deceased by Augustino was induced from other causes as it is to assume or infer that it was because of the employment, or that it arose out of the employment. There is, therefore, no legitimate basis upon which to rest such an inference, and, in view that the findings and award of the Commission are manifestly and entirely based upon such inference, the award is unlawful, and cannot stand.

Plaintiffs' counsel have cited a large number of cases which they insist support their contention that the award of the Commission in this case is contrary to law, and that its findings cannot be sustained. Among the numerous cases cited

we refer to the following:  *Allyn* v. *Fresno, etc., Co.,* 2 Cal.
I. A. C. 782; *In re McNicol,* 215 Mass. 497, 102 N. E. 697, L.
R. A. 1916A, 306; *Hinchuk* v. *Swift & Co.* (Minn.) 182 N. W.
622; *Chicago* v. *Ind. Com.,* 292 Ill. 406, 127 N. E. 49; *Mountain Ice Co.* v. *McNeil,* 91 N. J. Law, 528, 103 Atl. 184, L.
R. A. 1918E, 494; *De Filippis* ·v. *Falkenberg,* 170 App. Div.
153, 155 N. Y. Supp, 761, affirmed by the New York Court
of Appeals in 219 N. Y. 581, 114 N. E. 1064; *Marion County
Coal Co.* v. *Ind. Com.,* 292 Ill. 463, 127 N. E. 84; *Coronado
Beach Co.* v. *Pillsbury,* 172 Cal. 682, 158 Pac. 212, L. R. A.
1916F, 1164; *Union S. Mfg. Co.* v. *Davis,* 64 Ind. App. 227,
115 N. E. 676; *Jacquemin* v. *Turner,* 92 Conn. 382, 103 Atl.
115 L. R. A. 1918E, 496; *State* v. *Dist. Court* (Minn.) 168 N.
W. 555; *Schmoll* v. *Weisbrod,* 89 N. J. Law, 150, 97 Atl. 723;
*Laurino* v. *Donovan,* 183 App. Div. 168, 170 N. Y. Supp. 340;
*In re Boelema,* 4 N. C. C. A. 855, note; *In re Chaney,* 12 N.
C. C. A. 901; *In re Krupyak,* 11 N. C. C. A. 237; *Gregory* v.
*Chapman,* 38 N. J. Law, 363.

In *Marion County Coal Co.* v. *Ind. Com.,* in the headnote,
the rule in respect to a quarrel between two employees which
resulted in injury by violence is stated thus:

"The killing of a miner by a car driver, both employees in coal
mine, was not the result of an accident 'arising in the course of the
employment,' and there was no causal connection between the employment and the killing, so that employer was not liable under
Workmen's Compensation Act, it resulting from a quarrel about
a past event in which deceased was the aggressor, he having complained of nondelivery to him the night before of an empty car
and of the presence of a chain for the machine runner in the empty
car just delivered."

In *Chicago* v. *Ind. Com.,* supra, the court, in considering
whether a felonious assault committed by a third person upon
an employee arose out of the employment, states the law thus:

' "The felonious assault which was made upon the deceased was
without any excuse. It had no more connection with the work in
which he was engaged than if Ramsey had been a loiterer on the
street and had asked for a drink from Gallagher's can. There was
no causal relation between the work and the assault. The affair
was purely personal, with no reference to the employment. Ramsey and Gallagher happened to be at the same place because of

their employment, but an injury done by one to the other on account of some purely personal grudge which this proximity gave an opportunity to inflict was not a result of the employment. There was no causal connection between the conditions under which the work was to be done and the injury. The injury was not incidental to the character of the business, but the deceased would have been equally exposed to it entirely apart from his employment."

In *Union S. Mfg. Co.* v. *Davis*, supra, the court, in the course of the opinion, uses the following language:

"It is not enough for the applicant to say, 'The accident would not have happened if I had not been engaged in that employment, and if I had not been in that particular place.' He must go further and must say, 'The accident arose because of something I was doing in the course of my employment, or because I was exposed by the nature of my employment to some peculiar danger.'"

. In this connection it should be remembered that an injury which is received in the course of the employment does not necessarily arise out of that employment. See *Twin Peaks Canning Co.* v. *Ind. Com.*, 57 Utah 589, 196 Pac. 853. Nor, in the absence of facts and circumstances authorizing such an inference, can it be assumed that an injury which is inflicted upon an employee by a third person either arose out of the employment or that the violence was directed against the employee because of the employment.

The Attorney General insists, however, that the following cases sustain his position, namely: *Procter* v. *Serbino* (1915) 3 K. B. 344; *Sparks Milling Co.* v. *Ind. Com.*, 293 Ill. 350, 127 N. E. 737; *Saunders* v. *New England Collapsible Tube Co.*, 95 Conn. 40, 110 Atl. 538; *Papinaw* v. *Grand Trunk Ry. Co.*, 189 Mich. 441, 155 N. W. 545.

The Proctor Case is especially relied on. In the course of the opinion in that case, at page 346, it is said:

"I think it is settled law that if nothing more is known and you are driven to mere surmise or conjecture the dependents of the deceased cannot succeed in their claim for compensation. The burden is on them to prove that death occurred by reason of an accident arising out of and in the course of his employment."

The writer of the opinion then suggests that the ultimate fact may, however, be inferred from other facts, and that such inference may be deduced from circumstantial facts

where there is no direct or positive evidence. In justice to the Attorney General we desire to add that in the course of the opinion there are some loose expressions from which it might be assumed that, in case two inferences equally reasonable may be deduced from the facts and circumstances, one of which is favorable to and the other against the claim of the dependents, the Commission may determine which one of the inferences it will adopt, and whatever inference it adopts will be binding upon the reviewing court. When everything that is said in the opinion is considered, however, the foregoing conclusion is hardly permissible. This is so for the reason that by what is said in that opinion the sense in which the term "burden of proof" is used is clearly that of establishing a controverted fact or issue; that is, the term is used in the sense that the party upon whom rests the burden of proof must produce evidence from which the probabilities in favor of the material fact or issue to be established preponderates as against the probabilities in opposition or against such fact or material issue. If the evidence is merely such that the probabilities are equal, then the fact is not established, and the party upon whom rests the burden of proof must fail. For these, and other reasons appearing in the opinion, the loose expressions found therein must be considered in the light of all that is said.

While the other cases cited by the Attorney General are peculiar in their facts and circumstances, yet none of them go any further than to lay down the rule that the ultimate fact as to whether the injury in question was caused by an accident which arose out of and in the course of the employment may be inferred from the facts and circumstances in each case. In all of them it is held, however, that the burden of proof is upon the applicant, and that there must be some substantial evidence in support of the findings of the Commission. No other conclusion is permissible.

There is another feature of the case, which, in view of the fact that it involves public rights, we feel constrained to refer to before closing.

In view of the recent decision of this court in *Interurban*

*Const. Co.* v. *Ind. Com.*, 58 Utah, —, 199 Pac. 157, with respect to the statutes of limitations, the Commission inserted the following statement as a part of its findings: "That the State Insurance Fund does not hold the statute of limitations as a bar to compensation." We remark that in cases before the Commission pleadings are not necessary, and are not generally filed. All that usually appears is the application or petition of the applicant in which the necessary jurisdictional facts and other facts are stated. The hearing usually is based upon this application. In this case the record does not even contain such a petition or application. The date upon which the injury occurred is, however, made to appear. Under the practice prevailing in this jurisdiction a demurrer may be interposed where it appears upon the face of the petition or complaint that the action or proceeding is barred by the statute of limitations. All that appears in this case, however, is the statement of the Commission referred to. It is elementary that, in order to avail himself of the provisions of the statute of limitations, a party must in some form indicate that he relies on the defense, usually by pleading it. Where there are no pleadings required, the defense of the statute of limitations may, nevertheless, be invoked if done in proper time and by properly indicating that it is relied on. It is also elementary that, unless pleaded or relied on, the statute is waived. No doubt any person who has the right to interpose the statute of limitations may waive such right. To do that, however, ordinarily at least, implies that the right to waive is personal, and that in waiving it the person doing so acts in a personal capacity and in his own right. In this case, for example, the company, one of the plaintiffs, could waive the right to interpose the statute of limitations as a defense if it chose to do so. It could, however, only waive the right so far as it affected its own rights. Whether the State Insurance Fund could waive the benefit of the statute of limitations presents a different question. That fund is administered by the Industrial Commission as public officials, and hence is administered by them as trustees and not in their own right. The question therefore arises, May the statute of limitations be

waived by those officials? It manifestly is their duty to administer the fund in accordance with law, and so as to treat all alike who have a right to participate in that fund. The people in their sovereign capacity have an interest in the State Insurance Fund, and they are entitled to have the same distributed to those only who are legally entitled thereto. To permit the Commission, or any other person having control of that fund, to waive the statute of limitations at will must, in the long run, result in injustice and favoritism, since the statute can be enforced as against A., B., and C., and as easily waived in favor of D., E., and F. A person or corporation distributing his or its own money may elect to waive the benefit of the statute of limitations in favor of A. while he or it may insist upon it as against B. without abusing any trust or disregarding a public duty. A public official may, however, not indulge in such a practice without abusing a trust and without bestowing a favor on one which he denies to another. In our judgment, where, as here, a fund is to be administered and distributed by public officials, it should be administered and distributed strictly in accordance with law, and to those only who are legally entitled thereto without favor to anyone. Under such circumstances the language of the Supreme Court of Mississippi in the case of *Trowbridge* v. *Schmidt*, 82 Miss. 475, 34 South. 84, is applicable. In referring to the duty of a municipal board to interpose the plea of the statute of limitations, the court, in the course of the opinion, said:

"It is indisputable that a municipal board cannot lawfully give away public money."

In the course of the opinion it is further said:

"It is the plain duty of a county or municipal board to plead the statute of limitations when it can under the facts. Such boards are the people's trustees."

If it is the duty of municipal or county officers to interpose the defense of the statute of limitations where public funds are in question, it certainly is the duty of a state official who is entrusted with public funds to do likewise. If he fails in doing so he must either disregard the

statute of limitations entirely, and thus ignore the law, or he must practice favoritism by enforcing it as against one claimant while he waives it in favor of another. It needs no argument to show that such a practice would be intolerable.

In view of what has been said, it follows that the award of the Commission cannot be sustained. It is therefore ordered and adjudged that the award in favor of the claimant be, and the same is hereby, set aside and annulled. Plaintiffs to recover costs of this proceeding.

CORFMAN, C. J., RITCHIE, District Judge, and GIDEON, and THURMAN, JJ., concur.

WEBER, J., being disqualified, did not participate.