(No. 21767.— )
THE BANNER TAILORING COMPANY *et al.* Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JESSIE E. HOFELD, Defendant in Error.)

*Opinion filed December 22, 1933.*

SABATH, PERLMAN, GOODMAN & REIN, (THEODORE E. REIN, ISIDORE GOODMAN, and MORTON C. CHESLER, of counsel,) for defendant in error.

McKENNA, HARRIS & SCHNEIDER, (JAMES J. McKENNA, and ABRAHAM W. BRUSSELL, of counsel,) for plaintiffs in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

The Banner Tailoring Company and the Bankers Indemnity Insurance Company were granted this writ of error to the circuit court of Cook county to review a judgment of that court confirming an award of the Industrial Commission, which in itself had confirmed an award of an arbitrator allowing compensation at the rate of $15 per week for 296 weeks and one week at $10, as provided by paragraph (a) of section 7 of the Workmen's Compensation act, to Jessie Hofeld, the widow of Felix S. Hofeld. It was contended that his death was caused by an accident arising out of and in the course of his employment within the meaning of and as defined by the Workmen's Compensation act, and such was the finding of the arbitrator, of the Industrial Commission and of the circuit court.

The record shows that the deceased was a traveling salesman employed by the Banner Tailoring Company and that in the course of his employment he traveled from place to place in an automobile; that on July 27, 1931, he was found dead at the rear of his automobile, which was parked slightly off of the main traveled part of the highway on a detour on road 36 in Helt township, Vermilion county, Indiana. It appears from the record that when he was found he had taken off his coat and hat, which were hanging on the side of the car, and that the right rear tire was blown out; that there was a jack near the right rear wheel, off which the car had apparently rolled, and which jack had a handle about three and one-

half feet long; that the ground sloped slightly at that place, and that the deceased, when found dead, had a severe bruise and mark across his right cheek and temporal bone. There was also evidence tending to show that the imprints in the dirt were such as to indicate that the car had rolled off the jack two or three times, that the brakes on the car were not set, and that when the car was later driven away by the coroner he found the brakes to be in very poor condition.

There was a stipulation entered into by the parties before the hearing held by the arbitrator in which all of the bases of liability were admitted excepting only one question, which was stipulated to be the only point of dispute between the parties, as follows: "The only question in dispute in this case is whether there was an accident on the 27th day of July, 1931, arising out of and in the course of the employment, and whether the said accident caused the death of the said Felix S. Hofeld."

The only medical witness called by either party was Dr. C. M. Zink, a physician and surgeon of Clinton, Indiana, and also coroner of Vermilion county, Indiana. He testified that he did not see the accident but came to the place on a call by the sheriff at about four o'clock in the afternoon. When he got there the body was lying on the right side of the road and the car was parked as above indicated. The record is not clear as to just who first found the body of the deceased, although it indicates that two boys who were going swimming were the first to see it. The main facts as hereinabove indicated, however, are clearly to be found in the record and may be accepted as true. The doctor described the position of the jack, the length of the jack's handle, the marks in the ground indicating that the car had rolled off of it a time or two, and also testified that there was a mark on the face of the deceased about four or five inches long, extending from the cheek across the right temporal region, and that there

was a bruise over the temporal region which was in that mark and the skin was broken there. He described it as looking like a black eye. He conducted two post-mortem examinations. The first one was in the evening of the day of the accident, at about 5:30, at which time he opened up the chest and examined the heart and lungs, opened up the abdomen and examined the liver, stomach and bowels and all of the organs in the abdominal cavity. Upon that examination he did not find enough evidence, as he testified, to say that there was anything wrong there which might or could have caused the death. He did admit on cross-examination that he found a slight enlargement of the heart, but he did not give it any particular weight in his diagnosis. The next morning the witness went further with his autopsy and opened the head of the deceased, whereupon he found a Y-shaped fracture of the right temporal bone, with a large blood clot, about two inches in diameter, underneath the surface of the skull but outside the cavity of the brain itself. The doctor gave it as his opinion that the deceased came to his death from cerebral hemorrhage due to the fracture and that the fracture was caused by some kind of a blow. He also gave it as his opinion that the blow was a result of external violence rather than from falling, saying that had it been a case of heart failure the man would have "fallen limp" and without sufficient force to produce the traumatic conditions found. There is no evidence in the record which controverts the testimony of the doctor, and the facts as stated by him are substantially all that is to be learned about the accident, there having been no eye-witness.

It is contended by the plaintiffs in error that the record fails to prove the contentions of the claimant for compensation; that the evidence failed to show that the death arose out of the employment, and that the decisions of the arbitrator, of the Industrial Commission and of the circuit court rest on imagination, speculation and conjecture.

The plaintiffs in error contend that the petitioner below failed to prove by competent evidence that the deceased was killed by the "jack striking him on the head," as set forth in the application for adjustment of claim. It was stipulated, as above stated, that the only question in dispute was whether or not there was an accident on the 27th of July, 1931, arising out of and in the course of the employment and whether the accident caused the death of Hofeld. It is clearly immaterial in this court whether he was struck by the jack or by the handle of the jack, this stipulation of the parties having prevented the raising of any such question as that above suggested for the first time in this court.

It is further contended by the plaintiffs in error that an inference that the deceased died of a skull fracture caused by a fall induced by heart trouble or other natural causes unrelated to the employment is equally as probable as the inference that the jack-handle struck him; that the inference that he was killed by a person who attacked him in order to rob him is equally as probable, and they seek to set aside the award upon the theory that circumstantial evidence must be such as to exclude other equally probable inferences. It is sufficient to say as to the heart-trouble theory that it was not agreed to by the only doctor who testified, he being also the coroner, who performed the autopsy, and the plaintiffs in error did not see fit to introduce any medical testimony enlarging upon that theory. The testimony of the doctor was to the effect that if the man had fallen over on account of heart trouble he would have "fallen limp" and without sufficient force to fracture the skull and cause the injury which was definitely found. Concerning the argument on the robbery theory, it was proved that the deceased still had valuable diamonds, a watch and some money upon his person, and there was no evidence at all to sustain it. As against this there is the definite evidence as to the position of the car, the marks

shown by the jack where it had been repeatedly placed, the fact that the handle was long enough to reach out and strike a vicious blow should the car roll off of the jack, as it did, coupled with the very definite and severe injury across the cheek and temple, the fractured temporal bone, and the blood clot inside of the skull but outside of the brain itself, which negatived the possibility of an internal brain hemorrhage. From all of these facts it was quite reasonable for the arbitrator, the Industrial Commission and the circuit court to find as they did.

We have repeatedly held that circumstantial evidence is legal evidence and sufficient to support an award by the Industrial Commission. In *Sparks Milling Co.* v. *Industrial Com.* 293 Ill. 350, we said: "The proof of these facts may be by circumstantial as well as by direct evidence. When it is said that the claimant must prove her case it is not meant that she must necessarily prove it by direct evidence and that somebody actually saw what took place, because in many cases that is impossible." What we said there is directly applicable to the case at bar.

The findings in this case are not against the manifest weight of the evidence and it is not for us to disturb them. *Peoria Terminal Railway Co.* v. *Industrial Com.* 279 Ill. 352; *Sparks Milling Co.* v. *Industrial Com. supra; Smith-Lohr Coal Co.* v. *Industrial Com.* 286 Ill. 34; *Hydrox Chemical Co.* v. *Industrial Com.* 291 id. 579.) We have decided this point many times and it is unnecessary to further multiply the citations.

Finding no error in the judgment of the circuit court of Cook county confirming the award of the Industrial Commission, that judgment is affirmed.

*Judgment affirmed.*